Matthew E. JACKSON, Jr., Appellant,

v.

UNIVERSITY OF PITTSBURGH, David C. Sullivan and Wesley W. Posvar, in their official and individual capacities.

No. 86–3391.

United States Court of Appeals, Third Circuit.

Argued Feb. 11, 1987.

Decided Aug. 19, 1987.

---

Matthew E. Jackson, Jr., Pittsburgh, Pa., pro se.

Steven P. Fulton, Martha Hartle Munsch (argued), Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for appellees.

Before HIGGINBOTHAM and STAPLETON, Circuit Judges, and RODRIGUEZ, District Judge.[*]

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This appeal requires us to determine whether summary judgment was properly granted for the defendants-appellees in an employment discrimination case. Because record evidence demonstrates the existence of genuine issues of material fact that must be resolved at trial, we determine that, in part, it was not properly granted. We therefore will reverse the judgment of the district court on appellant's federal claims concerning his discharge and remand them for trial.

### I. BACKGROUND

Appellant Matthew E. Jackson, Jr., who is black, was hired on July 15, 1975 by appellee the University of Pittsburgh ("Pitt") to work as an attorney in its legal department. Jackson continued in this position until January 3, 1984, when he was

---

[*] Honorable Joseph H. Rodriguez, United States District Judge for the District of New Jersey, sitting by designation.

discharged by appellee David C. Sullivan, who had then been Pitt's general counsel, and Jackson's supervisor, for one year. Jackson thereafter filed an internal grievance with Pitt concerning his termination; he also complained to the Pennsylvania Human Relations Commission ("PHRC"), the Equal Employment Opportunity Commission ("EEOC") and the Office of Federal Contract Compliance Programs ("OFCCP"), that his discharge was racially motivated.[1] On February 1, 1985, Jackson commenced this action, alleging federal claims under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2 (1982), and Section 1981 of the Civil Rights Act of 1866 and the Voting Rights Act of 1870, 42 U.S.C. § 1981 (1982), and pendent state claims. After discovery and a hearing, the district court denied Jackson's motion for summary judgment and entered summary judgment for appellees. *Jackson v. University of Pittsburgh*, No. 85–0264 (W.D.Pa. June 11, 1986). This appeal followed. Our jurisdiction is conferred by 28 U.S.C. § 1291 (1982).

## II. *THE GOVERNING LAW*

We review grants and denials of summary judgment by applying the same test a district court should employ. *Marek v. Marpan Two, Inc.*, 817 F.2d 242, 244 (3d Cir.1987); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *see generally Bushman v. Halm*, 798 F.2d 651, 656–57 (3d Cir.1986). Rule 56 permits a district court to grant a summary judgment motion only when "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A disputed factual matter is a "genuine" issue "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Material" facts are those "that might affect the outcome of the suit under the governing law. . . ." *Id.*

Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be viewed in the light most favorable to the party opposing the motion. The nonmovant's allegations must be taken as true and, when these assertions conflict with those of the movant, the former must receive the benefit of the doubt. *Goodman*, 534 F.2d at 573 (footnote omitted).

■ In a federal discrimination case such as this one, the governing law includes the "method of . . . presumptions and shifting burdens of production" set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ("*McDonnell Douglas*"), and its progeny. *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir.1984).

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's [dismissal]." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ("*Burdine*") (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *see generally*

---

**1.** On December 20, 1984, the OFCCP concluded that "[n]o elements of race consideration were found in complainant's termination." Appendix for Appellant ("App.") at 838. The record also indicates that Jackson withdrew his PHRC and EEOC charges before either of those agencies

had made a determination. *See id.* at 529, 531 (Deposition of Matthew E. Jackson, Jr.). Jackson did, however, receive right to sue letters from these agencies on November 11, 1984, and December 17, 1984, respectively. Brief for Appellant at 27.

*Robinson v. Lehman,* 771 F.2d 772, 777 n. 13 (3d Cir.1985); *Kunda v. Muhlenberg College,* 621 F.2d 532, 541–43 (3d Cir.1980).

This Court noted recently, in the context of a federal age discrimination claim, that "a defendant's burden of production as the moving party on summary judgment generally is to show that the plaintiff cannot meet his [or her] burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 895 (3d Cir.1987) (in banc), *cert. dismissed,* —— U.S. ——, 108 S.Ct. 26 (1987). This burden on the moving defendant is not satisfied, however, "merely by showing the plaintiff's inability to prove by *direct* evidence that the defendant's proffered reason is a pretext for ... discrimination." *Id.* (original emphasis). At the summary judgment stage, in other words, "all that is required [for a non-moving party to survive the motion] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve [at trial] the parties' differing versions of the truth...." *First Nat'l Bank of Ariz. v. Cities Servs. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). Further, because

> intent is a substantive element of this cause of action—generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve *any* genuine issues of credibility.

*Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981) (original emphasis).

## III. *APPELLEES' MOTION FOR SUMMARY JUDGMENT*

Appellees' motion for summary judgment, which the district court granted, sought judgment in its favor "in all respects." App. at 791. Thus, while the district court's brief opinion is less than clear in explaining the precise claims to which its order applies, we have concluded that the district court entered summary judgment for appellees on Jackson's Title VII and Section 1981 claims concerning his discharge, on his similar federal claims concerning Pitt's processing of his grievance, and on his pendent state claims alleging fraud, defamation and invasion of privacy. We will address these distinct summary judgments in that order.

### A. *Pitt's Discharge of Jackson*

■ Appellees make no contention that Jackson has failed to establish a prima facie case under the *McDonnell Douglas* method of proof. We note that (i) he belongs to a racial minority; (ii) he was employed as one of Pitt's in-house attorneys and was qualified for that position; (iii) he was discharged from that position; and (iv) his co-workers, who are white, were not discharged. The district court correctly found that Jackson established a prima facie case. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 179–80 (3d Cir.1985) ("A plaintiff alleging a discriminatory firing need only show that he [or she] was fired from a job for which he [or she] was qualified while others not in the protected class were treated more favorably.... Proof of discharge will establish a prima facie showing in a Title VII suit."), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986). Jackson, in other words, carried his "initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under [Title VII].'" *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) ("*Furnco*") (quoting *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)); *cf. EEOC v. Hall's Motor Transit Co.,* 789 F.2d 1011, 1015 (3d Cir.1986) ("an employer's decision to discharge an employee may superficially appear to be justified by legitimate business reasons and yet [may] have been motivated by racial prejudice").

■ Under *McDonnell Douglas,* appellees have also fulfilled their ensuing burden of production "to articulate some legitimate, nondiscriminatory reason" for Jack-

son's dismissal. 411 U.S. at 802, 93 S.Ct. at 1824. The summary judgment record now before us includes depositions, affidavits, documents and other evidence supporting appellees' position that Jackson "was simply a poor performer," Brief of Defendants-Appellees at 21, who was, accordingly, dismissed from his job.[2]

The true dispute in this appeal concerns the third stage of the *McDonnell Douglas* method of proof: Has Jackson introduced sufficient evidence to demonstrate the existence of a genuine issue whether appellees' "proffered justification is merely a pretext for discrimination"? *Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950. The district court concluded that Jackson's record evidence does not create such an issue; it "f[ound] no evidence of racial animus but on the contrary not[ed] abundant instances of unsatisfactory work performance [by Jackson that Sullivan] might reasonably regard as sufficient cause for discharge...." *Jackson*, No. 85–0264, mem. op. at 2 (W.D.Pa. June 11, 1986).

■ We reject the district court's conclusion. The record, including Jackson's lengthy deposition, contains more than "a scrap of evidentiary material to support h[is] argument." *Alizadeh v. Safeway Stores, Inc.*, 802 F.2d 111, 113 (5th Cir. 1986). Instead, throughout nearly 700 transcript pages, Jackson's deposition in numerous ways calls into question appellees' claims that Jackson was dismissed for performance deficiencies. Jackson's basic position is that he never received any complaints about—and, indeed, that he was often complimented for—his legal work dur-

ing his years at Pitt. *E.g.*, App. at 59, 427, 482–84, 527 (Deposition of Matthew E. Jackson, Jr.). Jackson also claims that Sullivan in particular never made specific complaints or gave Jackson "facts about anything," *id.* at 234 (same); that Sullivan, after discharging Jackson, began to solicit complaints about his work by calling "numerous individuals" at Pitt, *id.* at 352 (same); that Sullivan, after discharging Jackson, was seen "walking around the halls like a wild man," *id.* at 283 (same), "talking about he was going to ruin [Jackson's] reputation and destroy [him]," *id.* at 286 (same); and that Sullivan told Jackson's attorney "that [Sullivan] would ruin and destroy [Jackson,] ... something to the effect that [Jackson] would never be able to practice law in Pittsburgh again." [3] *Id.* at 360–61 (same). As a whole, such record evidence is more than sufficient to support the reasonable inference that Sullivan's criticisms of Jackson's performance are post hoc concoctions. It also suffices to support an inference that Sullivan orchestrated a campaign to get rid of Jackson because he is black. In refusing to draw such obvious inferences, and thus in entering summary judgment for appellees, it appears that the district court "invaded forbidden territory" that is reserved for a factfinder at trial. *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977).

Additionally, as to the substantive legal tasks that appellees allege Jackson mishandled during his years of employment at Pitt, Jackson counters with claims that he

---

**2.** At the same time the district court granted appellees' motion for summary judgment, it also denied Jackson's contemporaneous motion for summary judgment. Jackson separately appeals the denial of his summary judgment motion, claiming that, at stage two of the shifting *McDonnell Douglas* burdens, appellees failed to articulate a legitimate, nondiscriminatory reason for their challenged acts. In reality, however, this aspect of Jackson's appeal amounts to a claim that appellees' proffered reasons for terminating him are unsupported by a preponderance of the evidence and therefore are not worthy of credence. *See* Brief for Appellant at 39–46. We conclude that any such assessment must be made by the factfinder at trial; "[a]t the

summary judgment stage, 'the judge's function is not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.*, 812 F.2d 141, 144 (3d Cir.1987) (quoting *Anderson*, —— U.S. at ——, 106 S.Ct. at 2511). Accordingly, we will affirm the district court's denial of Jackson's motion.

**3.** We also note Sullivan's alleged statement of "hope [that Jackson] doesn't think the black judges can help him." App. at 52a (Deposition of Matthew E. Jackson, Jr.); *see also id.* at 284 (same).

was not the lawyer who was responsible for some of the matters in question, App. at 111–12 (Deposition of Matthew E. Jackson, Jr.), and that Sullivan refused Jackson's requests to bring in outside counsel to handle other specialty matters. *Id.* at 546–50 (same). In addition, Jackson claims that he was the only attorney in the office who had no secretary, *id.* at 63–64; 87, 96, 137, 542 (same), and that he alone was denied the assistance of less-experienced legal staff members who were otherwise available. *Id.* at 205–06, 542–44 (same). Such evidence supports the reasonable inference that Jackson was treated less favorably than his white colleagues in ways that could explain any "deficiency" in his performance. *Cf. Bellissimo,* 764 F.2d at 180 (trial court finding that Ms. Bellissimo proved pretext was "clearly erroneous because [she] failed to make any showing of disparate treatment and because [defendant] proved that its male attorneys were treated the same as she in the disputed areas"). It suffices, in short, to raise a genuine issue of fact whether Jackson's dismissal really had anything at all to do with his performance.

We make no claim to believe or to disbelieve Jackson's evidence. That, we emphasize, is wholly the province of the factfinder at trial. *See Bushman,* 798 F.2d at 660 ("While plaintiff's credibility may be challenged by opposing counsel at trial, it is not the function of the court to assume the role of the fact finder upon summary judgment."); *Graham v. F.B. Leopold Co., Inc.,* 779 F.2d 170, 173 (3d Cir.1985) ("What the district court chooses to infer or chooses not to infer is simply not relevant to consideration of a summary judgment motion."); *Fireman's Fund Ins. Co.,* 540 F.2d at 1178 ("[i]t is the function of the trier of fact alone ... to evaluate contradictory evidence"). We do note, and by reciting the deposition evidence in such detail we mean to demonstrate, however, that a factfinder reasonably could conclude that appellees' position is mere pretext. Jackson's opposition to the summary judgment motion was therefore not based only upon "t[he] bare-bone allegations in h[is] brief and pleadings...." *Alizadeh,* 802 F.2d at

113; *cf. Sola v. Lafayette College,* 804 F.2d 40, 45 (3d Cir.1986) (affirming summary judgment where plaintiff "produced no evidence [beyond her allegations] that she was denied tenure in part based on her gender"); *accord Kephart v. Institute of Gas Technology,* 630 F.2d 1217, 1218 (7th Cir. 1980) (per curiam) (affirming summary judgment for employer in age discrimination case where "the subsidiary facts plaintiff put forward as evidence ... [gave] no indications of motive and intent, supportive of his position, to put on the scales for weighing [—i]t was a wholly empty case"), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Pierce v. New Process Co.,* 580 F.Supp. 1543, 1546 (W.D.Pa.) (granting summary judgment for employer in age discrimination case where "plaintiff [was un]able to present any facts to indicate pretext or discriminatory intent"), *aff'd,* 749 F.2d 27 (3d Cir.1984). It was, rather, based upon his own evidence and comprehensive testimony, and was sufficient to withstand the motion for summary judgment. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 617 (3d Cir.1987) (where "reasonable minds could differ[,] ... an issue of material fact remains ... for the trier of fact"); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 732 (9th Cir.1986) (race discrimination plaintiffs relied upon evidence including "their declarations" to survive employer's summary judgment motion); *Walters v. President & Fellows of Harvard College,* 645 F.Supp. 100, 102 (D.Mass.1986) ("*plaintiff's contentions* ... [placed] the underlying facts ... sufficiently in question that summary judgment is not warranted") (emphasis added).

■ Appellees' central argument in this appeal—a position that the district court appeared to adopt in granting their motion for summary judgment—is that Jackson's deposition, because it is his only record evidence, is insufficient to create a genuine factual issue on the ultimate question of race discrimination. This position relies upon our decision in *Molthan v. Temple*

*Univ.*, 778 F.2d 955 (3d Cir.1985), affirming the entry of judgment for the defendant in a Title VII sex discrimination suit. In *Molthan*, "we agree[d] with the district court that no evidence was adduced from which a jury could reasonably have inferred that sex discrimination played any part in the denial of [plaintiff's] promotion," and we concluded that plaintiff's evidence there "was insufficient as a matter of law to warrant any [such] inference...." *Id.* at 962. We did not hold, however,—contrary to appellees' assertions at oral argument before this Court—that a discrimination plaintiff must offer "some evidence other than [his or] her own subjective belief" or "put on at least one other witness other than [himself or] herself" before his or her case will survive motions for summary judgment and/or directed verdict,[4] and we explicitly reject any intimations to the contrary. There is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination that will survive a motion for summary judgment.

In today's climate of public opinion, blatant acts of discrimination—the true "smoking guns"—can easily be identified, quickly condemned and often rectified in the particular settings where they occur. Much of the discrimination that remains resists legal attack exactly because it is so difficult to prove. Discrimination victims often come to the legal process without witnesses and with little direct evidence indicating the precise nature of the wrongs they have suffered. That is one of the reasons why our legal system permits discrimination plaintiffs to "prove [their] case[s] by direct *or circumstantial* evidence." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3,

103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983) (emphasis added); *accord Maxfield v. Sinclair Int'l*, 766 F.2d 788, 791 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986); *Lewis v. University of Pittsburgh*, 725 F.2d 910, 919 n.10 (3d Cir.1983), *cert. denied*, 469 U.S. 892, 105 S.Ct. 266, 83 L.Ed.2d 202 (1984). This record, unlike that in *Molthan*, contains both circumstantial evidence and Jackson's direct evidence from which a jury could reasonably infer that Jackson's performance as a lawyer was not deficient, that appellees' claims to the contrary are mere pretext, and that race discrimination played a role in Jackson's discharge.[5] Therefore, because "the issue of pretext turns on [Jackson']s credibility[, it] is not appropriate for resolution on a summary judgment motion." *Chipollini*, 814 F.2d at 901; *accord Pollock v. American Tel. & Tel. Long Lines*, 794 F.2d 860, 865 (3d Cir.1986) (where "record contains more than simple accusations and speculation[,] ... there is sufficient evidence to put [the employer's] motivation in issue"); *cf. Attorney Gen. of the United States v. Irish People, Inc.*, 796 F.2d 520, 523 (D.C.Cir. 1986) (per curiam) (Bork, Scalia and Gesell, JJ.) ("affidavits from [nonmovant organization's] officers and staff," which "District Court dismissed ... as conclusory and lacking particularity, ... were adequate to raise a genuine issue of fact in light of the nature of the Attorney General's evidence and the issue involved").

### B. *Pitt's Handling of Jackson's Grievance*

Count II of Jackson's complaint alleges that Pitt, in processing Jackson's grievance, intentionally deviated from the provisions of its *Staff Handbook*, provisions that Pitt had previously represented as ap-

---

**4.** Although the oral argument has not, to our knowledge, been transcribed, these quotations from appellees' argument were obtained with care from the Court's audio tape.

**5.** This is the record evidence and the inferences drawn therefrom that a court is not, at the summary judgment phase, free to minimize,

much less disbelieve. *Molthan*, which was not a summary judgment case, did, by contrast, involve our Court's refusal to credit evidence—allegations that defendants there made a number of sexist comments—that "[t]he district judge did not believe...." 778 F.2d at 962 n. 1.

plying to all of its employees, and that this deviation itself was racially motivated, in violation of Title VII and Section 1981. *See* App. at 11. Appellees answer, *inter alia,* that Jackson, who held a nonclassified staff position at Pitt, is not covered by the handbook's grievance procedure for classified employees. On appellees' motion for summary judgment, the district court denied Jackson's claim, which it called a "procedural due process" claim, accepting instead appellees' argument that Jackson is not covered by the *Staff Handbook* procedure.[6] *Jackson,* No. 85–0264, mem. op. at 2 (W.D.Pa. June 11, 1986).

Jackson has not addressed this aspect of the district court's judgment in either of his briefs or in his oral argument to this Court. Accordingly, we conclude that it has not been appealed. *See generally Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 755 F.2d 38, 40 n. 2 (3d Cir.), *cert. denied,* 474 U.S. 819, 106 S.Ct. 67, 88 L.Ed.2d 54 (1985).

### C. *Jackson's Pendent Claims*

After disposing of Jackson's federal claims, the district court asserted that it was within "its discretion [to] decline to consider the pendent State claims...." *Jackson,* No. 85–0264, mem. op. at 2 (W.D.Pa. June 11, 1986). Convinced that these pendent claims "raise[d] no peculiarly difficult or doubtful questions of State law [that] should be reserved for disposition by State courts," *id.,* however, the district court also granted appellees' motion for summary judgment on these claims.

 We conclude that this aspect of the district court judgment also has not been appealed. The only reference to these claims is the final words on the final page of Jackson's brief, which asks us to remand "for trial on the pendent state claims." Brief for Appellant at 50. This is insuffi-

cient to put the issue before us. *See* Fed. R.App.P. 28(a)(2) (appellant's brief must contain a statement of the issues presented for review); *cf. Brown v. Sielaff,* 474 F.2d 826, 828 (3d Cir.1973) (per curiam) (citing Rule 28 for the proposition that, where the "appellant has not pressed a point in this appeal, we are unable to notice it"). Further, these claims are not addressed at all in Jackson's Reply Brief and were not raised in the course of his oral argument. Accordingly, under the law of this Circuit, he has "waived this issue on appeal." *Delaware Valley Citizens' Council For Clean Air,* 755 F.2d at 40 n. 2 (issue "not addressed in appellant's brief, reply brief or at oral argument"); *accord Lugar v. Texaco, Inc.,* 755 F.2d 53, 57 n.2 (3d Cir. 1985); *NLRB v. Wolff & Munier, Inc.,* 747 F.2d 156, 167 (3d Cir.1984) (Sloviter, J., dissenting); *Battle v. Pennsylvania,* 629 F.2d 269, 271 n. 1 (3d Cir.1980), *cert. denied sub nom. Scanlon v. Battle,* 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981).

### IV. *CONCLUSION*

For the foregoing reasons, we will affirm the district court's denial of appellant's motion for summary judgment. We will reverse the district court's entry of summary judgment for appellees on appellant's federal claims concerning his discharge and remand them for trial on the merits. Costs will be taxed against appellees.

---

**6.** The district court found that "the grievance procedure upon which plaintiff relies is applicable only to classified employees whose code numbers appear in a specified list of job titles, which does not include plaintiff's job." *Jackson,* No. 85–0264, mem. op. at 2 (W.D.Pa. June 11, 1986).