**James L. FARMER, Plaintiff,**

v.

**E.I. du PONT de NEMOURS AND COMPANY, INCORPORATED, Defendant.**

**Civ. A. No. 91–167–CMW.**

United States District Court, D. Delaware.

March 14, 1992.

---

**494**

Charles S. Knothe, Wilmington, Del., for plaintiff.

Catherine Hagerty Thompson, and Richard Allen Paul, of E.I. du Pont de Nemours & Co., Wilmington, Del., for defendant.

### OPINION

CALEB M. WRIGHT, Senior District Judge.

This action was commenced on March 25, 1991 by James L. Farmer ("Farmer") alleging violations of Title VII by the defendant E.I. duPont de Nemours ("duPont"). The Court has jurisdiction pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

Prior to filing the instant action, Farmer, on February 9, 1990, had filed charges of employment discrimination with the Delaware Department of Labor ("DDOL") and the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued its determination on December 10, 1990, finding that Farmer had failed to establish a violation but permitting Farmer until March 26, 1991 to file an action in the district court.

Presently before the Court is the defendant's motion for summary judgment. The defendant claims Farmer has failed to show he was subject to any discriminatory treatment and is wholly unable to meet his burden of proof on the essential elements of the claim. Alternatively, the defendant claims that the plaintiff's demand for a jury trial and for compensatory damages must be stricken as they are not permitted in a Title VII action.

Briefing having been completed[1], this issue is ready for decision. For the reasons stated below the motion for summary judgment will be granted.

### I.  FACTUAL BACKGROUND

Farmer was employed by duPont at the duPont Country Club in Wilmington, Delaware beginning in January, 1966. (Docket Item 1, ¶ 3; Docket Item 15, p. A–3). When originally hired, Farmer was employed to set up function rooms at the Country Club. (Docket Item 13, p. A–7). After serving in several capacities, he was promoted to the position of Commissary Clerk. (Docket Item 15, p. A–3). In 1977 or 1978 Farmer acquired additional duties, specifically, he assumed purchasing duties following the retirement of the purchasing agent. (Docket Item 13, p. A–7). At this time, he possessed both the purchasing and receiving duties for the Country Club. (Docket Item 13, p. A–8).

This dual function that Farmer served continued for several years. In September, 1988 duPont's finance department recommended that purchasing and receiving functions be separated as they viewed one person serving both purposes as having an inherent conflict. (Docket Item 13, p. A–10).

---

**1.** The Court notes that the plaintiff's answering brief was not timely filed and failed to comport with local rules. However, because of the dispositive nature of this motion, the Court considered the brief, as submitted, in rendering this decision.

As a result of this internal audit, a decision was made to separate the functions. (Docket Item 15, p. A–4). Thus, the Storeroom was changed to the Commissary and Farmer's title was changed from Storekeeper to Commissary Clerk. (Docket Item 15, p. A–4). These changes occurred by August, 1989 and at that time Farmer was given a new job description. (Docket Item 13, p. A–13). The new job description was provided to Farmer just before he left for vacation in August, 1989 and the new description eliminated his responsibilities for purchasing. (Docket Item 13, pp. A–13, A–14). Accordingly, under his new job description, he still maintained responsibility for receiving and inspecting incoming goods and checking them against the purchase orders and the vendors' delivery invoices but he no longer was responsible for maintaining inventory and ordering. (Docket Item 15, p. A–4; Docket Item 13, p. A–14). Although there was a change in his job description and title, Farmer still received the same pay and was retained at the same job level. (Docket Item 15, p. A–4; Docket Item 13, pp. A–14, A–15).

Farmer admits to having known that the auditors recommended the change as early as March or April, 1989. (Docket Item 13, p. A–11). Further, Farmer agreed that from a business perspective such a change was called for in order to eliminate the apparent conflict. (Docket Item 13, p. A–12). Moreover, Farmer agreed that it was within duPont's discretion to change the job function of a person if needed. (Docket Item 13, pp. A–16, A–20).

Farmer now complains that the removal of the purchasing responsibilities was discriminatory in nature. According to Farmer's deposition testimony, although he believes the decision makes good business sense he does not feel as though he should have been affected by the change. (Docket Item 13, p. A–11). Further, although he was the only employee who did purchasing and receiving for the Country Club, Farmer found it unsettling that he was the only one within the Country Club that was affected by the change. (Docket Item 13, p. A–11). Farmer testified that the change in policy, although based on good business

sense, was done to personally affect him. (Docket Item 13, p. A–12). In so stating, Farmer indicates that he believes this to be true because of his supervisor's attitudes toward him prior to the change. (Docket Item 13, p. A–12).

On October 6, 1989 Farmer was injured while at work. (Docket Item 13, pp. A–21, A–23). Subsequently, on October 10, 1989 or October 11, 1989, Farmer saw duPont's doctor and was told he could return to work but had lifting restrictions. (Docket Item 13, p. A–19; Docket Item 15, p. A–4).

DuPont sent Farmer a registered letter dated October 16, 1989 which he received on October 18, 1989 requesting that Farmer contact his supervisor immediately as they had been unsuccessful in contacting him by telephone. (Docket Item 13, p. A–30). The letter indicated that if Farmer failed to contact the company they would take that as an indication that he was resigning his employment. (Docket Item 13, p. A–30).

Another letter was sent on October 23, 1989. (Docket Item 13, p. A–31). In this letter it was stated that he had been absent from work without permission since October 12, 1989 and although the company had been trying to contact him, all attempts proved futile. (Docket Item 13, p. A–31). Moreover, the letter stated that the unexcused absences were against company policy and that further absence without permission would lead to his discharge. (Docket Item 13, p. A–31).

On October 25, 1989 Farmer wrote to Tom Howell, his supervisor, and effectively resigned his employment. (Docket Item 13, p. A–21). In this letter, Farmer indicated that he was resigning because he did not believe his supervisors regarded his injury as authentic. (Docket Item 13, p. A–21).

On October 27, 1989, prior to receiving Farmer's letter, duPont sent Farmer a letter discharging him from their employment effective immediately for being "absent from work without permission." (Docket Item 13, p. A–22). Thus, Farmer's twenty-

three year career with duPont Country Club came to a close.

On February 10, 1990 Farmer filed a Charge of Discrimination with the DDOL and the EEOC. On December 10, 1990 the EEOC issued its determination finding no violation as a result of duPont's actions and permitting Farmer until March 26, 1991 in which to file a complaint in the district court. On March 25, 1991 Farmer filed the present action.

It is on this factual background that the Court must decide the present motion for summary judgment. Only if no genuine issue of material fact exists is summary adjudication appropriate. Fed.R.Civ.P. 56(c).

## II. SUMMARY JUDGMENT MOTION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). If there is no genuine issue as to any material fact then the moving party is entitled to judgment as a matter of law. *Id.* An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are "material" and only disputes over facts that "might affect the outcome of the suit under the governing law" will defeat summary judgment. *Id.*

The Court of Appeals for the Third Circuit has provided the following standards for determining the appropriateness of summary judgment in a Title VII case under the relevant substantive law:

> The burden of proof in Title VII cases is governed by the framework erected in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and iterated by its progeny.

> *Jackson v. University of Pittsburgh,* 826 F.2d 230, 233 (3d Cir.1987), *cert. denied,* [484] U.S. [1020], 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to rebut the proof of discrimination by articulating some legitimate, non-discriminatory reason for the employee's discharge. The ultimate burden of persuasion, which remains always with the plaintiff, may then be met by proving by a preponderance of the evidence that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093–1094, 67 L.Ed.2d 207 (1981); *Hankins [v. Temple Univ.],* 829 F.2d [437] at 440. [ (3rd Cir.1987) ] The plaintiff may satisfy the ultimate burden of proving discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095 (*citing, McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26). Circumstantial evidence may suffice to challenge the defendant's alleged reasons as pretextual. *Chipollini,* 814 F.2d at 895.

Because the plaintiff bears the burden of persuasion in Title VII actions, a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry the burden of proof at trial. The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a prima facie case of discrimination; or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for discharge.

*Jalil v. Avdel Corp.* 873 F.2d 701, 706–707 (3d Cir.1989), *cert. denied*, 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). Discriminatory conduct may be shown either directly or indirectly. In order to prove it directly, the plaintiff must prove discriminatory intent on the part of the employer. To show discriminatory conduct in an indirect manner the plaintiff must prove that they: (1) were a member of a protected class; (2) were qualified for the job in question; and (3) were treated differently than others not in the protected class. *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817; *Burdine*, 450 U.S. 248, 101 S.Ct. 1089; *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1990).

If there is any doubt as to the existence of a genuine issue of material fact, it is to be resolved against the movant. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Moreover, all inferences are to be viewed in light most favorable to the non-movant. *Id.*

## B. DISCUSSION

When the complaint is viewed in the light most favorable to the plaintiff, the only alleged violation of Title VII presented is the reclassification of his job so as to reduce his job duties and allegedly to provide him with a lower level job than he previously held. (Docket Item 1, ¶¶ 6–8, 10). According to the complaint, the plaintiff is a black male and his previous job duties were reassigned to two white employees. (Docket Item 1, ¶¶ 5, 9). Thus, plaintiff claims a violation of Title VII is present.

The plaintiff has wholly failed to provide the Court with any evidence even to support the allegations presented in the complaint, let alone to substantiate the necessary elements of a claim under Title VII. In an attempt to get beyond this motion for summary judgment the plaintiff, in his answering brief, stated the following with respect to proving his claim:

The Plaintiff met his burden of presenting a prima facie case in his complaint. Plaintiff is a black male qualifying him within a protected group under Title VII. Prior to his change of position he had the sole responsibility of purchasing for the club for the prior 11 years, clearly qualifying him for the position of purchasing agent. Although it would seem logical that Plaintiff should have received the duties of the purchasing agent at the time of the change, his duties were diminished to that of a storeroom laborer without sufficient reason for the change being presented. Furthermore only his position was affected with the purchasing duties reassigned to a white male.

(Docket Item 14, p. 6). While this argument may have some merit on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it is without value on a motion for summary judgment pursuant to Fed.R.Civ.P. 56. One cannot "prove" a claim simply by stating what the complaint alleges.

When the record is viewed in the light most favorable to the plaintiff, summary judgment is mandated. There is no direct evidence of discriminatory treatment. Further, the plaintiff has failed to prove discriminatory conduct in an indirect manner.

Although the plaintiff is a member of a protected class and appears well qualified for the position there is no proof that (1) he suffered an adverse job decision (his pay and job level were unaffected by the reclassification of his job duties) or (2) that a person not in the protected class was treated differently. Although the plaintiff claims in the complaint that two white people received his additional duties and his answering brief states that a white person received the duties, there is no record support for the Court to find these allegations to be true. Thus, the Court concludes that the plaintiff has failed to put forth proof sufficient to establish a prima facie case of discriminatory treatment under Title VII.

Even if all of plaintiff's unsupported allegations are taken as true and the Court were to find this sufficient to establish a prima facie case of discrimination, the

498

Court would still be required to grant summary judgment in this case. The defendant has articulated a non-discriminatory business reason for the action and the plaintiff has failed to put forth any evidence that that reason is pretextual.

The defendant stated that the change in job responsibilities was done to remove any inherent conflict in having the same person performing both purchasing and receiving functions. Not only has the plaintiff failed to put forth evidence to rebut this assertion, but he agrees with the defendant that the decision made good business sense. Further, plaintiff indicated that under the circumstances, duPont had every right to reclassify his job. Thus, the Court finds the plaintiff has failed to produce sufficient evidence to support a finding that duPont's reason for the change was merely pretextual and summary judgment is appropriate.

## III. CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is granted and the motion to strike is denied as moot. An appropriate order will be entered.