**Marie R. JACKSON, Plaintiff,**

v.

**AMERICAN CHEMICAL SOCIETY, Defendant.**

**Civ. A. No. 90–2817 (GHR).**

United States District Court, District of Columbia.

Jan. 25, 1993.

---

Marni E. Byrum, Arlington, VA, for plaintiff Marie R. Jackson.

Jerome C. Shaefer, Carl Roberts, O'Brien, Birney & Butler, Chevy Chase, MD, for defendant American Chemical Soc.

## ORDER

REVERCOMB, District Judge.

This is an employment discrimination case. Plaintiff Marie R. Jackson filed suit alleging violations of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e et seq., as well as negligent and intentional infliction of emotional distress. By Order dated July 12, 1991, this Court granted defendant American Chemical Society's ("ACS") motion to dismiss the count alleging negligent infliction of emotional distress, but denied dismissal on the remaining counts. Now before the Court is ACS's Motion for Summary Judgment on the remaining claims. This motion has been fully briefed and the parties have been heard in oral argument. Having carefully reviewed the briefs and supporting exhibits, and having considered the parties' arguments, the Court will grant in part and deny in part defendant's Motion.

1. *The Title VII Claim*

The Court will deny ACS's Motion for Summary Judgment as to Ms. Jackson's

claim under 42 U.S.C. § 2000e. The Court is satisfied that plaintiff has raised a triable issue of material fact whether the reason proffered by ACS for not hiring her for the administrative assistant position she had applied for and for which she was qualified, and hiring a non-minority applicant instead, is mere pretext under the governing legal standards.

There is no dispute that plaintiff has made out a prima facie Title VII case:[1] Ms. Jackson is a member of a racial minority (she is black); she was qualified for the position of administrative assistant to the director for operational support at ACS for which she applied in 1988; she was rejected for that position; and, after her rejection, the position was given to a qualified non-minority applicant, Ms. Marilyn Britt. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Valentino v. United States Postal Serv.*, 674 F.2d 56, 63 (D.C.Cir.1982). To rebut this inference of discrimination under *McDonnell Douglas*'s burden-shifting test, *see* 411 U.S. at 802, 93 S.Ct. at 1824, ACS argues that Ms. Britt was appointed because she was without a position, having recently lost her job as an administrative assistant in a sequence of executive reassignments, and because she had higher qualifications for the position than did Ms. Jackson. ACS also argues that Ms. Jackson was offered a new staff assistant position instead with "virtually the same type of work and a salary range identical to that for the Administrative Assistant position for which Ms. Britt was selected," Def.'s Mem. at 13, which Ms. Jackson declined.

◼ Under the *McDonnell Douglas* test, Ms. Jackson's burden at trial is to show that ACS's reasons for rejecting her in favor of Ms. Britt are pretextual. *See* 411 U.S. at 804, 93 S.Ct. at 1825. As the nonmoving party on a motion for summary judgment, she must come forward with "sufficient evidence to demonstrate the existence of a genuine issue whether [defendant's] 'proffered justification is merely a pretext for a discrimination'" if she would resist summary judgment in favor of ACS. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 234 (3d Cir.1987), *cert. denied*, 484 U.S. 1020, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). In determining that plaintiff has met her burden here, the Court notes the following. First, "[t]he district judge, in ruling on a motion for summary judgment, must assume the truth of the non-movant's evidence, and draw all justifiable inferences in that party's favor." *Bayer v. United States Dep't of the Treasury*, 956 F.2d 330, 333 (D.C.Cir.1992). Second, the nonmoving plaintiff in a discrimination suit is not limited to direct evidence, but may resort to indirect or circumstantial evidence to establish pretext. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 895 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987); *see also United Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 1481 n. 3, 75 L.Ed.2d 403 (1983) ("As in any lawsuit, the plaintiff [in a discrimination case] may prove his case by direct or circumstantial evidence").

◼ These principles have been found to apply with particular force in discrimination cases because proof of intent must often be inferred from the conduct of the parties. *See Jackson*, 826 F.2d at 233 (quoting *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir.1981) (emphasis in original)). As a result, district courts have been admonished not to resolve "'*any* genuine issues of credibility'" on summary judgment. *Id.* Moreover, and contrary to defendant's suggestions, there is no requirement that a discrimination plaintiff offer some evidence other than her own subjective belief, as reflected in her affidavit or deposition, in order to survive summary judgment: "There is simply no rule of law that provides that a discrimination plaintiff may not testify in his or her own behalf, or that such testimony, standing alone, can never make out a case of discrimination

---

1. ACS conceded, at the hearing on its earlier motion to dismiss, that Ms. Jackson had stated a claim under Title VII, and it adheres to that position in the instant motion. *See* Def.'s Mem. of P & A in Supp. of Mot. for Summ. J. at 18.

that will survive a motion for summary judgment." *Id.* at 236.

■ In this case, Ms. Jackson claims that she received encouragement and promises of promotion to the exempt administrative assistant position from her supervisor, Michael Phillippe, in several conversations in late 1987 and early 1988. *See* Jackson Aff. ¶¶ 20–23. Ms. Jackson further claims that, notwithstanding Mr. Phillippe's assurances, Phillippe told her on April 1, 1988, that she would not be appointed to be his administrative assistant after all and that the position had been given to Ms. Britt. *See id.* ¶ 24. Ms. Jackson alleges that, on this occasion, Phillippe specifically told her, "Marie, my hands are tied," meaning that the appointment of Ms. Britt was out of his control. *See* Jackson Dep. at 159. Ms. Jackson further alleges that Phillippe then told her that, during his college days, he had been called "nigger lover" for agreeing to accept a black roommate.

The Court is satisfied that these allegations, viewed in the light most favorable to the non-moving party, at least suggest that racial bias may have been a factor in the decision to appoint Ms. Britt to the administrative assistant position over Ms. Jackson. Mr. Phillippe's alleged "nigger lover" remark, apparently made by him without any prompting, supports an inference that Ms. Jackson's race may have been considered in filling the administrative assistant position. Moreover, taken together with Phillippe's alleged comment that his hands were tied, that remark could also be interpreted as providing some circumstantial evidence that others at ACS, if not Mr. Phillippe, were unwilling to promote Ms. Jackson to the administrative assistant position because she is black. Ms. Jackson recites several other instances of remarks allegedly made by co-workers and supervisors, and changes in her work environment after she filed an internal complaint in mid-April, 1988, which, if true, could be interpreted as evidence of racial animus directed toward her.

Under the summary judgment standards summarized above, the Court believes that this testimony, contained in Ms. Jackson's affidavit and deposition, sufficiently disputes ACS's proffered legitimate, non-discriminatory reason for not promoting her so as to survive summary judgment. It may be, as ACS argues, that Ms. Jackson had difficulties working with others, that she was overly sensitive to perceived slights, and that she was too quick to read racial animus into the remarks and actions of others. The Court is satisfied, however, that the persuasiveness of these assertions rests on questions of credibility that should not be determined at this stage in the litigation. *See Jackson,* 826 F.2d at 233.

### 2. *The § 1981 Claim*

■ Summary judgment on plaintiff's claim under 42 U.S.C. § 1981 should also be denied. That claim is to be evaluated under the standards for § 1981 actions articulated by the Supreme Court in *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), which was the law in effect at the time plaintiff filed her complaint, rather than under the more generous provisions subsequently enacted by Congress in the Civil Rights Act of 1991, Pub.L. No. 102–166, § 101, codified at 42 U.S.C. § 1981. *See Gersman v. Group Health Ass'n, Inc.,* 975 F.2d 886 (D.C.Cir.1992) (holding that the 1991 amendments to § 1981 have no retroactive effect).

■ Nevertheless, even under *Patterson's* more restrictive view of the law, plaintiff's § 1981 claim survives summary judgment because she has raised a triable issue of material fact whether a promotion from her non-exempt position as an administrative secretary to the exempt position of administrative assistant "rises to the level of an opportunity for a new and distinct relation between the employee and the employer" so as to be actionable under this statute. *Patterson,* 491 U.S. at 185, 109 S.Ct. at 2377. Specifically, plaintiff has come forward with evidence that the work of an administrative assistant differed substantively from that of a secretary and involved far less direct supervision and more independent work so as to support the inference that the promotion sought by

Ms. Jackson would have entailed a new and distinct relationship between her and ACS. *See* Jackson Dep. at 132, 169, 178; Phillippe Dep. at 88; Pl.'s Exh. 10.

### 3. *The Claim of Intentional Infliction of Emotional Distress*

■ The Court will grant summary judgment on plaintiff's supplemental claim for intentional infliction of emotional distress, although it does so on different grounds than those argued by defendants.[2] Under District of Columbia law, a claim for intentional infliction of emotional distress, in the absence of physical injury, requires the plaintiff to demonstrate 1) extreme and outrageous conduct by the defendant that 2) intentionally or recklessly 3) caused the plaintiff severe emotional distress. *See Abourezk v. New York Airlines, Inc.*, 895 F.2d 1456, 1458 (D.C.Cir.1990); *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.), *cert. denied*, 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982). The D.C. Court of Appeals has recognized that, in certain cases, "[a]ctions which violate public policy may constitute outrageous conduct sufficient to state a cause of action for infliction of emotional distress." *Howard Univ. v. Best*, 484 A.2d 958, 986 (D.C. 1984) (citing *Macey v. New York State Elec. and Gas Corp.*, 80 A.D.2d 669, 670, 436 N.Y.S.2d 389, 391 (3d Dep't 1981)).

■ It is clear from her affidavit, deposition, and the deposition of her psychologist, that the allegedly outrageous behavior that Ms. Jackson contends caused her emotional distress consisted entirely of defendant's acts of discrimination. Courts in this jurisdiction have held in similar cases that dismissal of the intentional tort claim is warranted because the conduct and the injury complained of are subsumed by Title VII: "To the extent that plaintiff's claim results from a stressful work situation created by defendants' alleged acts of discrimination, it is subsumed within her discrimination claim." *Green v. American Broadcasting Companies, Inc.*, 647 F.Supp. 1359, 1363 (D.D.C.1986) (citing *Stewart v. Thomas*, 538 F.Supp. 891, 896 (D.D.C.1982); *see also Weiss v. International Bhd. of Elec. Workers*, 729 F.Supp. 144, 147 (D.D.C.1990) (dismissing an IIED claim, citing both *Stewart, supra*, and *Green, supra*, as authority for so doing). The Court agrees and will grant summary judgment to ACS on this count.

Accordingly, for the reasons stated above, the Court will GRANT defendant's Motion for Summary Judgment as to plaintiff's claim for intentional infliction of emotional distress, and DISMISS Count IV of her complaint. Summary judgment as to Counts I and II is DENIED.

Counsel for the parties shall attend a status conference at 9:00 a.m. on March 26, 1993, for the purpose of scheduling further proceedings in this case.

SO ORDERED.

---

2. In addition to arguing that plaintiff has failed to come forward with evidence of discriminatory acts that constitute outrageous conduct—an argument the Court would reject for substantially similar reasons to those set forth in its ruling on plaintiff's discrimination claims—defendant also argues that, pursuant to a recent decision in the Superior Court for the District of Columbia, Ms. Jackson's claim for intentional infliction of emotional distress is barred under the D.C. Worker's Compensation Act, D.C.Code § 36–601 *et seq. See Underwood v. Washington Post Employees Fed. Credit Union*, Daily Wash. L.Rep., 26 Aug. 1992, at 1918 (Super.Ct. No. 88–CA–10060) (1990). The Court believes defendant misreads *Underwood*, which is readily distinguishable on its facts from the case at bar. In *Underwood*, Judge Eilperin concluded that a "substantial question" existed whether the outrageous actions of an officer of a corporation were wholly unconnected to the corporation's interests, thereby constituting "accidental injury" within the scope of the Worker's Compensation Act. Ms. Jackson's case rests instead upon allegations of *intentional* discrimination against her *by* ACS which, if proven, could not be compensable under Worker's Compensation.