Richard WINN; David Ehrlich; Newlin Corporation; and Somerset of Virginia, Inc., Appellants,

v.

Wayne L. LYNN.

No. 91–1033.

United States Court of Appeals, Third Circuit.

Argued June 6, 1991.

Decided Aug. 12, 1991.

As amended Aug. 26, 1991.

Rehearing and Rehearing En Banc Denied Sept. 4, 1991.

---

Before SLOVITER, Chief Judge, GREENBERG, HIGGINBOTHAM, Circuit Judges.

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

The appellants appeal from the District Court's Order dated August 6, 1990, 1990 WL 115920, which denied their motion to amend the complaint to include two government officials, in both their professional and individual capacities, who caused an *ex parte* order to be issued against the appellants. We hold that the district court did not err in finding that these officials are subject to qualified immunity from suit.

## I.

In 1975, the Pennsylvania Department of Environmental Resources ("DER") issued various permits to operate the Strasburg Landfill. The Strasburg Landfill operated as a solid waste facility in the Norristown region of the Pennsylvania DER. Strasburg Landfill Associates owned the land upon which the landfill was located, and leased the land to Strasburg Associates which operated the landfill. Strasburg Associates was a joint venture made up of two Pennsylvania limited partnerships, both of which had Earle Hart as their sole general partner. In 1978, Earle Hart entered into a joint venture, Strasburg Landfill Associates, with several other parties.[1] The appellants, Richard Winn and David Ehrlich, were officers in one of the corporations, Newlin Corporation, belonging to the joint venture, Strasburg Landfill Associates. The corporate appellants, Newlin Corporation and Somerset of Virginia, Inc. were two of the entities comprising Strasburg Landfill Associates.

In early 1983, the landfill was cited for a number of violations. These included continuing to accept waste after the landfill had reached its capacity, and leakage of

Bruce L. Thall (argued), Abramson, Cogan, Kogan, Freedman & Thall, P.C., Philadelphia, Pa., for appellants.

Ernest D. Preate, Jr., Susan J. Forney (argued), Calvin R. Koons, John G. Knorr, III, Office of Atty. Gen., Harrisburg, Pa., for appellee.

---

1. The other members of the joint venture were: 1) Eco–Waste, Inc. (a Pennsylvania subchapter–S corporation owned by Earle Hart and his wife); 2) Newlin Corporation (also a subchapter–S corporation, the officers and sole shareholders of which were Richard Winn and David Ehrlich); and 3) Somerset of Virginia, Inc. (a Virginia corporation doing business in Pennsylvania as Somerset Strippers of Virginia, Inc.). Eco–Waste had a fifty (50%) percent interest in Strasburg Landfill Associates, and Newlin Corporation and Somerset of Virginia each retained a twenty-five (25%) percent interest.

contaminated waste into the groundwater. Beginning in April of 1983, Wayne Lynn, then Regional Solid Waste Manager of DER, authorized the issuance of four notices of violation concerning the operation of the landfill. The notices were not issued directly to the appellants herein. Rather, the notices named and were issued to the following parties: Mr. Earle Hart, General Partner of permittee Strasburg Associates, Strasburg Associates, and Strasburg Landfill Associates as parties.

In September of 1983, officials at the DER decided to take action. Without notice to the parties, the DER issued an *ex parte* Order requiring that a water quality bond be posted in connection with the operation of the Strasburg landfill. The Order named the following as responsible parties: Strasburg Associates, Strasburg Landfill Associates, Newlin Corporation, Eco-Waste Inc., Somerset of Virginia Inc., Earle R. Hart, David Ehrlich, and Richard Winn. The parties named in the order were supplied by Kenneth A. Gelburd, then a staff attorney with the DER.[2] Although the order correctly described the structure of the various partnerships and corporations and their roles in the ownership and operation of the landfill and the land upon which it was situated, the order did not explicitly set forth the basis of liability for the individuals and entities named herein. Mr. Winn and Mr. Ehrlich contested their being named as individual responsible parties. They contended that they had no prior notice of the violations or of their potential responsibility, unlike Mr. Hart who had received notice in April of 1983. The appellants also believed that they would not have been named in the order but for the direction of Mr. Gelburd who allegedly harbored resentment against them.

On appeal to the DER's Pennsylvania Environmental Hearing Board, the appellants had the opportunity to be heard for the first time, and they voiced their objections. The administrative process was fraught with delay. During this period, the appellants complied with the terms of the *ex parte* order, and aver that they spent 1.7 million dollars in an attempt to comply.[3] After five years passed without any action on the administrative appeal, in October of 1988 the appellants filed a motion for declaratory and injunctive relief against the DER in federal district court.[4] The appellants amended their complaint several times, and ultimately the court dismissed the Third Amended Complaint. The third amended complaint, which incorporat-

---

**2.** Appellant contends that Mr. Gelburd has a "deep-seated animosity towards Mr. Winn and Mr. Ehrlich ... [H]e abhorred Mr. Winn and Mr. Ehrlich due to his belief that they were responsible for environmental "disasters" in New Jersey ... he named [them] because they were "millionaires" and "well-heeled"; and because Mr. Gelburd believed that naming only Newlin (or Somerset) would be meaningless given his assumption that each entity had not funds or assets." [A–221a, 219a–221a, 322a–327a, 480a–482a]

**3.** Appellants *did not file for a supersedeas bond*, which would have suspended their payments due under the ex parte order, because the potential environmental damage threatened by the landfill was not *de minimis*. Ordinarily, supersedeas bonds are allowable only when the potential damage is *de minimis*. *See Parker Sand & Gravel v. Commonwealth Department of Environmental Resources*, 1983 Pa.Envtl. Hearing Bd. 557 (1983) (quoting *former* 25 Pa.Code § 21.78).

**4.** Six years after the *ex parte* order was issued, in October of 1989 the Pennsylvania Environmental Hearing Board issued a decision. The Board held that Strasburg Landfill Associates, as the owner of land, was improperly named in the *ex parte* order pursuant to the Solid Waste Management Act Administrative Code. The Board found that the Solid Waste Management Act did not impose liability on a landowner for the polluting violations of a lessee absent the owner's knowledge, and active condoning, of those violations. Since there was no evidence of such activity, Strasburg Landfill Associates and, *a fortiori*, Mr. Winn and Mr. Ehrlich should not have been named in the order. However, the Board held that the two corporations, the Newlin Corporation and Somerset of Virginia, were properly named under § 316 of the Clean Streams Law as responsible parties.

An appeal was taken from this decision to the Commonwealth Court of Pennsylvania. On August 10, 1990, the Commonwealth Court affirmed the Board's determination. *Newlin Corp. v. Commonwealth Department of Environmental Resources*, 134 Pa.Cmwlth. 396, 579 A.2d 996 (1990), *app. denied*, — Pa. —, 588 A.2d 915 (1991).

ed the 1989 Board determination, was directed solely against appellee Wayne L. Lynn in his official capacity as the Regional Solid Waste Manager for the DER. The matter before us pertains to appellant's motion to amend their complaint for a *fourth* time. In this proposed amended complaint they, for the first time, sought to include Lynn in his personal capacity, and Gelburd, in his official and personal capacities. On August 6, 1990, the district court issued an order denying the motion to amend the complaint for the fourth time. The court held that the doctrines of absolute immunity and qualified immunity barred the plaintiffs from amending their complaint to include Mr. Gelburd and Mr. Lynn as party-defendants, thus the court did not reach the declaratory judgment and civil rights claims asserted by the appellants. The next day, the court *sua sponte* issued an order requiring the appellants to show cause why the underlying action represented by the Third Amended Complaint should not be dismissed in view of the court's dismissal order. By order issued December 13, 1990, the court dismissed appellants' complaint in its entirety. The district court determined that both Lynn and Gelburd were entitled to absolute immunity from suit under the civil rights statutes because they were executive officials who fit within the narrowly defined protected category, and in an alternative holding, the court held that they were entitled to qualified immunity. The district court also dismissed the remaining counts of the complaint. The appellants filed a timely appeal from that order on January 14, 1991.

This court has jurisdiction over this appeal from a final order of the district court pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction over the declaratory judgment and civil rights action pursuant to 28 U.S.C. §§ 1331 & 1343.

## II.

The immunity issues are the primary issues addressed on this appeal. The appellants contend that neither Lynn nor Gelburd are entitled to absolute or qualified immunity, and that the district court had no basis upon which to dismiss the non-civil rights counts of the complaint. We will consider each of these issues.

■ Qualified immunity is the more limited type of immunity, and generally protects government officials performing discretionary functions "insofar as [their] conduct does not violate clearly established statutory or constitutional rights which a reasonable person would have known." Note, *Qualified Immunity for Government Officials: The Problem of Unconstitutional Purpose in Civil Rights Litigation*, 95 Yale Law Journal 126 (1985) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). A reviewing court must consider each element before determining that a particular official is entitled to qualified immunity.

■ The appellants here contend that the district court erred in holding that Lynn and Gelburd are entitled to qualified immunity in accordance with the Supreme Court's decision in *Harlow v. Fitzgerald*, 457 U.S. at 800, 102 S.Ct. at 2727. We disagree. In *Harlow* the Supreme Court set out to increase the protection afforded government officials by the qualified immunity defense. The *Harlow* court determined that a plaintiff could no longer allege malicious intent to defeat an official's qualified immunity in a civil rights action.

### a. *Malice*

The appellants contend that there is record evidence of malice which should strip the appellees of the qualified immunity defense. The appellees note that the cases cited by the appellant predate the Supreme Court's decision in *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)[5] which plainly established that *Harlow* intended to limit the

**5.** *On remand, Creighton v. Anderson,* 724 F.Supp. 654 (D.Minn.1989), *aff'd Creighton v.*

*Anderson,* 922 F.2d 443 (8th Cir.1990).

inquiry for determining whether qualified immunity applies to the objective factors, and to specifically exclude a consideration of the officials' subjective intent. Appellee's Br. at 27.

The appellants are patently incorrect on the malice issue. The Supreme Court's decision in *Anderson* cemented the Court's intention to exclude any inquiry into the subjective beliefs of a government employee. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039. The *Anderson* court considered whether police officers who conducted a warrantless search of a home where they suspected a robbery suspect was hiding out were subject to qualified immunity from civil liability for their actions. In an opinion written by Justice Scalia, the Court held that an objective standard should be used. The Court determined that

> law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986)). The Court expressly struck down any attempt to "reintroduce into the qualified immunity analysis the inquiry into officials' subjective intent that *Harlow* sought to minimize." *Id.* Therefore, we agree with the appellees that the cases cited prior to *Anderson* are not controlling here. Further, the determination that malice is actually present in the record is at most highly speculative. Since a number of the communications to and from Mr. Gelburd were privileged, the record does not establish malice. As the appellants note, it is difficult, and we would add impossible, to establish malice on the part of Mr. Lynn.

### b. *Discretionary Function*

■ The appellants further contend that even if malice is not relevant to this inquiry, Mr. Lynn and Mr. Gelburd are not subject to qualified immunity here because no discretionary function was involved in this case. *See Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (Held that under the Federal Torts Claims Act the government should not be liable for "an act of discretion in the performance of governmental function"); *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), *on remand Berkovitz v. United States*, 858 F.2d 122 (3d Cir.1988) (Held under Federal Torts Claims Act government could not avail itself of the discretionary function exemption from liability for its decision to approve a particular lot of the polio vaccine). The appellants are also incorrect on this point. First, the only cases cited, *Dalehite* and *Berkovitz*, define discretionary authority within the confines of the Federal Torts Claims Act which contains a specific discretionary function exception at 28 U.S.C. § 2680(a). While these cases may be analogous, they are not controlling here. Second, even if we apply the standards set out in these cases, we must find that the officials here exercised discretionary authority. In *Berkovitz*, the Supreme Court noted that a discretionary function 1) must involve an element of choice or judgment, and 2) a decision to protect such discretion must be based on considerations of public policy. *Berkovitz*, 486 U.S. at 536-37, 108 S.Ct. at 1958-59.

Mr. Lynn, in signing the order, clearly exercised his discretion. He was not obligated to sign the order by any statutory or constitutional directive. *See Berkovitz*, 486 U.S. at 534-35, 108 S.Ct. at 1957-58. Although Mr. Lynn did not carefully review the order, his decision to rely on the document prepared by his subordinates could be considered an exercise of discretion. Likewise, Mr. Gelburd exercised discretion by including the names of the parties. In each case we can say that a judgment or choice was made, and we may posit that valid public policy reasons, namely protecting the environment, were present for their decision to execute the *ex parte* Order.

For the foregoing reasons, we conclude that a discretionary function was involved

in the actions of both Mr. Lynn and Mr. Gelburd.

### c. Violation of Statutory & Constitutional Rights

Finally, appellants contend that regardless of whether we find that malice existed or is relevant, or that a discretionary function was involved, the officials in this case are not entitled to qualified immunity because their actions were violative of "clearly established statutory and constitutional rights" and they should have been aware of this. Curiously, the appellants do not specifically list the rights that were violated; rather they cite three recent Third Circuit cases in an attempt to establish that the officials in this case should have reasonably anticipated liability. *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir.1990); *Ryan v. Burlington County*, 889 F.2d 1286 (3d Cir.1989); *Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir.1989), *cert. denied*, — U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1989).

While these cases do establish that officials should be aware of the law governing their actions, they do not establish any principle that we find applicable to the case at bar.

Both *Andrews* and *Stoneking* involve sexual harassment and sexual assault charges against government officials. This court held that the supervisors (in *Andrews*, workplace supervisors, and in *Stoneking*, the principal and assistant principal of a high school), who had been apprised of a dangerous or potentially dangerous situation, were not entitled to qualified immunity because they should have known that their failure to act was unlawful. In *Ryan* this court determined that the Board of Freeholders of Burlington County should not have been awarded qualified immunity for their failure to adequately protect prisoners in light of the conditions at the jail.

In each of these cases, a supervisor was aware of a potentially harmful situation, and exercised his or her discretion not to act. The courts therefore, determined that they should not be subject to qualified immunity. In the case at bar, the "supervisor," Mr. Lynn, had not been previously informed about any potential harm to the appellants. Nor was he aware of, nor should he have been aware of such harms. As a result, we find that the cases cited by the appellants are not applicable to the facts of this case.

After a careful consideration of each of the relevant factors, we hold that this district court did not err in determining that Lynn and Gelburd are entitled to qualified immunity. While it may be a closer case as to whether appellees are entitled to absolute immunity, we need not decide the absolute immunity issue here since we hold that the appellees are entitled to qualified immunity. Accordingly, we will affirm on the qualified immunity issue.

### III.

■ There are two additional issues raised on this appeal. The appellants contend that there was no basis for dismissing the first four counts of the complaint since immunity only applied to the civil rights matters. In response, the appellee notes that the claims for injunctive and declaratory relief were not properly preserved for appeal since the appellants failed to discuss these in their response to the court's Order to show cause. Based on the foregoing, we conclude that the appellants, when confronted with a general order to show cause, were obligated to preserve the additional issues for appeal.

■ The appellees raise the Eleventh Amendment issue for the first time in their reply brief. The appellees contend that state sovereignty bars suits by citizens against state officials acting in their official capacities, therefore the suit against Lynn and Gelburd should be barred by the Eleventh Amendment. The appellants simply note that they seek redress from the appellees in both their official *and individual* capacities. We agree with the appellants, and hold that the Eleventh amendment bar is irrelevant here.

In sum, we find these two issues to be without merit.

## V.

Based on the foregoing, we will affirm the holding of the district court on the issue of qualified immunity.