Alfred T. BECKETT, Plaintiff,

v.

DEPARTMENT OF CORRECTIONS OF THE STATE OF DELAWARE; Richard Kerney, individually and in his official capacity as Warden and employee of the Department of Corrections; Avery Brown, individually and in his official capacity as Deputy Warden and employee of the Department of Corrections; Phillip Townsend, individually and in his official capacity as Captain and employee of the Department of Corrections; and Michael Deloy, individually and in his official capacity as Captain and employee of the Department of Corrections, Defendants.

Civil Action No. 96–479 MMS.

United States District Court, D. Delaware.

Oct. 22, 1997.

William D. Fletcher, Jr., Noel E. Primos, Schmittinger & Rodriguez, Dover, DE, for Plaintiff.

Michael F. Foster, Jos. Scott Shannon, Deputy Attys. General, Department of Justice, Willmington, DE, for Defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### INTRODUCTION

Plaintiff Alfred Beckett filed this civil rights suit against the Department of Corrections ("Department") and individual defendants Deputy Warden Avery Bowen, Captain Phillip Townsend, then Captain Michael Deloy, and Warden Richard Kearney, alleging violations of Title VII,[1] 42 U.S.C. § 1981,[2] and 42 U.S.C. § 1983.[3] Beckett's § 1983 claim is based on alleged violations of his rights under the Fourteenth Amendment Equal Protection and Due Process Clauses.

**1.** 42 U.S.C.A. § 2000e–2(a) states:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin. . . .

2. 42 U.S.C.A. § 2000e(a) states:

The term "employer" means a person engaged in an industry affecting commerce . . . and any agent of such a person. . . .

**2.** 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. Rev. Stat.1977.

**3.** 42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

**4.** See Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077 (3d Cir.1996) (holding that "individual employees may not be held liable under Title VII"). The claims against the State of Delaware Department of Corrections

Specifically, Beckett claims that defendants Bowen, Townsend, Deloy, and Kearney intentionally discriminated against him when they failed to promote him. Beckett also claims the Department is liable for the actions of these individuals because they were acting as agents of the Department. Since filing the pleadings, plaintiff has voluntarily dismissed his Title VII claims against the individual defendants,[4] his claims under § 1983 against the Department and the individual defendants in their official capacity,[5] and all of his § 1981 claims.

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted and a motion for summary judgment on all claims against all defendants. Defendants raise several legal issues, each of which will be addressed in turn. This Court

remain viable. 42 U.S.C.A. § 2000e; *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456–457, 96 S.Ct. 2666, 2671–2672, 49 L.Ed.2d 614 (1976) ("We think that Congress may, in determining what is 'appropriate legislation' for the purpose of enforcing the provisions of the Fourteenth Amendment, provide for private suits against States or state officials which are constitutionally impermissible in other contexts. *See Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)").

**5.** *See Edelman,* 415 U.S. at 665, 94 S.Ct. at 1356 (holding that a suit for damages against a state official was barred by the Eleventh Amendment because the award against him would "inevitably come from the general revenues of the state"); *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) (reasoning that a "suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and, therefore, a suit against the state). *See also Sample v. Diecks et al.,* 885 F.2d 1099, 1112 (3d Cir.1989) (stating that a suit "nominally against an individual official . . . may nevertheless be viewed as one against the state if the suit seeks damages from the state treasury").

In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), however, the Court had established that the Eleventh Amendment provides no protection to a state officer who is sued in his individual capacity. *Id.* at 237. *See also Sample,* 885 F.2d at 1112 (holding same). Because neither plaintiff nor Defendants contend that a judgment for plaintiff against any of the named defendants in his individual capacity would result in fee liability being imposed on the state, the claims may proceed on individual capacity grounds.

has jurisdiction pursuant to 28 U.S.C. § 1343, civil rights action jurisdiction, and 28 U.S.C. § 1331, federal question jurisdiction. For reasons which appear below, summary judgment will be denied in part and granted in part.

## STATEMENT OF FACTS

The facts, viewed in a light most favorable to Beckett, are as follows. Beckett, an African–American, has been employed by the Department of Corrections at the Sussex Correctional Institution (SCI) since May of 1979. D.I. 57, App. at 1. In 1994, while in the position of Correctional Sergeant, Beckett applied for the position of Correctional Lieutenant. After achieving a passing score of 71 on the written examination and writing sample, Beckett received an interview. D.I. 54, App. at A–3. Correctional Sergeant Carl Day, who is a white male and scored a 71 on the written test, also received an interview. *Id.* Of the remaining individuals who passed the test and proceeded to the interview stage, two were black and ten were white. D.I. 54, App. at C–4.

Defendants Bowen, Townsend, and Deloy comprised the panel that interviewed all of the applicants. In deciding which candidate they would select, the panel considered five categories of criteria, weighted as follows: seniority (10%); dependability, reliability, EPPA's (performance evaluations), disciplinary actions, and sick leave usage (15%); experience (25%); interview (25%); and interview questions (25%). D.I. 57, App. at 55. These scores were aggregated and the final score determined whom the panel selected. *Id.*

The State's merit rules[6] governing the selection process for promotions, however, are much less subjective and assign no specific weight to the categories. The merit rules indicate that in decisions of promotion, transfer and demotion, "consideration shall be given to qualifications, performance recommendations, seniority, conduct and, where appropriate, the results of competitive exami-

nations." D.I. 57, App. at 107–109. Members of the panel were unable to explain when or how the percentages or the additional interview categories for their selection process were generated. D.I. 57, App. at 59, 86–88, 95.[7] It is undisputed, however, that this framework had been used during prior selection processes at SCI. D.I. 57, App. at 98.

The applicants' scores in the category "interview questions" were based on applicants' answers to five specific questions. D.I. 54, App. at C–1. At least one of the three panel members stated that two of the five questions had no right answers. D.I. 57, App. at 85. The category "interview" enabled the panel to rate more intangible aspects of the interview, although the different members of the panel did not agree on exactly which attributes they evaluated under this criterion. D.I. 57, App. at 63, 89, 99. For example, defendant Bowen emphasized that he was looking at such factors as confidence and response time in answering because some of the questions dealt with how to respond to and control inmates. D.I. 57, App. at 63. In contrast, defendant Deloy used the interview criterion to assess composure, problem solving skills, dress and verbal communication skills. D.I. 57, App. at 99.

During the interview, the panel members only asked Beckett about his hire date and his reasons for wanting the promotion. D.I. 57, App. at 111. After asking if Beckett had any questions, the panel members then proceeded to discuss topics unrelated to the position or to work in general. *Id.* At no time did the panel ask Beckett the five questions on which the "interview questions" score was based. *Id.* To varying degrees of specificity, all of the other candidates generally recall being asked at least some of the five (or similar) questions. D.I. 61, App. at 1–19.

After all of the ratings had been completed, Beckett scored as well as if not better than Day on all categories except one—"interview questions." D.I. 57, App. at 55. Day

---

6. Merit Rule § 13.0100 is promulgated pursuant to state law. Del.Code Ann. tit. 29, § 5918 (1996).

7. Other institutions have utilized different criteria with different weights assigned to the criteria. D.I. 57, App. at 51.

received a 20/25 and Beckett received a 13/25. *Id.* These scores contributed to a final score discrepancy of five between Day and Beckett (91 and 86, respectively). *Id.*[8] Each of the panel members submitted an affidavit attesting to the fact that Beckett performed poorly when answering the interview questions. D.I. 54, App. at C–2, D–2, E–2.[9] The panel members presented inconsistent information, however, about the remaining substance of Beckett's interview. D.I. 57, App. at 58, 82, 97. They also did not agree on who among the three panel members had input into the written notes evaluating Beckett's answers. D.I. 57, App. at 54, 65–66, 90.

In October 1994, Warden Kearney reviewed and approved the panel's recommendation of Carl Day. D.I. 57, App. at 76–77.[10] According to his deposition, Kearney only reviewed the applicants' scores in each of the broad categories discussed above. *Id.* This decision was discretionary and Kearney had unilateral authority over this determination. D.I. 57, App. at 76. Soon thereafter, Day was promoted.

### DISCUSSION

### I. Standards of Review

Defendants have filed a motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) and a motion for summary judgment under Fed.R.Civ.P. 56. However, "if matters outside the pleadings are presented to the district court on a motion under Rule[ ] 12(b)(6) . . . and the court does not exclude them, the motion must be considered as one under Rule 56 and determined in accordance with summary judgment principles." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir.1992) (citing 6 Moore's Federal Practice P 56.02[3], at 56–27 (1991)). *See also Carter v. Stanton,*

405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam) (where matters outside the pleadings are "presented and not excluded by the court," a motion to dismiss should be treated as one for summary judgment). Matters outside the pleadings have been submitted to and considered by the Court. Accordingly, defendants' motions will be considered as a single motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

When considering a motion for summary judgment, the Court must "view all facts and inferences in the light most favorable to the party opposing the motion." *Stephens v. Kerrigan*, 122 F.3d 171, 176–177 (3d Cir. 1997). Under the Federal Rules of Civil Procedure, the Court shall grant summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### II. Title VII Claim Against the Department of Corrections

#### A. Legal Standards

Defendant and plaintiff agree that a Title VII disparate treatment claim is governed by the familiar McDonnell Douglas framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–803, 93 S.Ct. 1817, 1823–1825, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of racial discrimination. *Id.* at 802, 93 S.Ct. at 1824. This prima facie case establishes a presumption that the employer unlawfully discrimi-

---

8. The total scores of the other two applicants who were African–American were 78.9 and 75.5. D.I. 57, App. at 55.

9. At least one of the panel members also asserted in his deposition that the panel asked the same five questions of all interviewees. D.I. 57, App. at 82.

10. The plaintiff also relies on inferences drawn from the fact that between January 1990 and

October 1994, when Day was promoted, only one of fourteen promotions at the institution in which Beckett works was given to a person who is African–American. D.I. 57, App. at 79. However, the plaintiff did not offer evidence either of the qualified applicant pool's racial breakdown during this time or of the specific involvement of the named defendants in these promotional decisions.

nated against the employee. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Second, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Finally, the plaintiff must have the opportunity to prove that the defendant's claimed reason is actually a pretext for discrimination. *See* 411 U.S. at 804, 93 S.Ct. at 1825. The Supreme Court has continued to emphasize, however, that the plaintiff "at all times bears the ultimate burden of persuasion." *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993) (internal quotation omitted).

■ Despite some insignificant differences in word choice, defendant and plaintiff agree on the first three elements that plaintiff must satisfy to establish his prima facie case: (1) that he is a member of a protected class; (2) that he applied for and was qualified for a job for which the employer was seeking applicants; and (3) that, despite his qualifications, he was rejected. Defendant also concedes in his brief that plaintiff has established these three components of his prima facie case. Defendant and plaintiff disagree, however, about the fourth component of plaintiff's prima facie case. Defendant argues plaintiff has to demonstrate that non–members of the protected class were treated more favorably. Plaintiff contends he only has to show that the position, in this case the promotion, was given to someone outside the protected class. This is one of those relatively rare cases in which the choice between these two standards could alter whether the plaintiff is able to establish his prima facie case.

*McDonnell Douglas* established the basic framework for the burdens of proof in a Title VII case. Recognizing there are "societal as well as personal interests on both sides of the equation," 411 U.S. at 801, 93 S.Ct. at 1823. the Court emphasized that the "order and allocation of proof" is a "critical issue." *Id.* at 800, 93 S.Ct. at 1823. The Court stressed that although Congress intended to assure equal employment opportunities and elimi-

nate related discriminatory practices, it did not intend Title VII to guarantee a job to every person, regardless of group identity. *See id.* It was with this critical balance of interests and needs in mind that the *McDonnell Douglas* Court carefully created its three part test. In articulating the first part, the Court stated that the plaintiff may establish his prima facie case by showing

> (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*Id.* at 802, 93 S.Ct. at 1824.

Although the *McDonnell Douglas* Court acknowledged that the "specification above of the prima facie proof ... [will not necessarily be] applicable in every respect to differing factual situations[,]" *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13, at no time did the Court indicate it contemplated a change in the plaintiff's burden to establish his case. For example, in *Hicks,* the Supreme Court applied the McDonnell Douglas framework to a discharge and replacement case. The *Hicks* Court modified the third component of the prima facie case to state that the plaintiff was "demoted from that position and ultimately discharged," and altered the fourth component to state that "the position remained open and was ultimately filled by a white man." 509 U.S. at 506, 113 S.Ct. at 2746. Although the standard was altered to be consistent with the factual scenario of the case, the fourth component remained a neutral statement that did not involve any element of intent or differential treatment.

Consistent with this approach, the Third Circuit Court of Appeals recently issued a decision adhering to the McDonnell Douglas test. In *Bray v. Marriott Hotels,* 110 F.3d 986 (3d Cir.1997), the court addressed whether an employer had discriminated against an African–American female employee when it promoted a white employee instead of her. *See id.* at 989. The court quoted the McDonnell test verbatim and stated that the slightly different factual pattern in the case before it

did not present a problem. *See id.* at 989–990; at 990 n. 5. *See also Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994) (quoting and following the McDonnell Douglas test).

The Third Circuit Court of Appeals has not, however, always followed the McDonnell Douglas framework as initially constructed. In amending the test to satisfy the needs of different cases, the court has at times stated the fourth component of the prima facie case as requiring the plaintiff to show that "non–members of the protected class were treated more favorably." *Weldon v. Kraft,* 896 F.2d 793, 797 (3d Cir.1990) (citation omitted). *Accord, Bennun v. Rutgers State University,* 941 F.2d 154, 170 (3d Cir.1991).

For the reasons stated below, the Court will follow the Supreme Court, *Bray* and this Court's recent decision in *Lewis v. State of Delaware,* 948 F.Supp. 352 (D.Del.1996), a failure to promote case, in which the plaintiff had to establish that "other employees of similar qualifications who were not members of the protected group were promoted." 948 F.Supp. at 360. First, the Supreme Court established the parties' respective burdens of proof within the prima facie case with a careful balancing of interests and needs in mind. *See McDonnell Douglas,* 411 U.S. at 800–801, 93 S.Ct. at 1823–1824. Requiring the plaintiff to prove that the defendant treated the non–member of the protected class more favorably would alter this delicate balance by increasing the initial burden on the plaintiff.

Second, the third prong of the McDonnell Douglas framework requires the plaintiff to prove that the defendant's proffered reason was a pretext for discrimination. *See McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825; *Hicks,* 509 U.S. at 515–516, 518, 113 S.Ct at 2751–2752, 2753. At trial, this burden requires plaintiff to prove 1) that the asserted reason was false and 2) that discrimination was the actual reason. *See Hicks,* 509 U.S. at 515, 113 S.Ct. at 2751. The *Hicks* Court explained, however, that although the plaintiff has the burden of

showing both parts of this equation, "rejection of the defendant's proffered reasons is enough at law to sustain a finding of discrimination." 509 U.S. at 511 n. 4, 113 S.Ct. at 2749 n. 4. To survive summary judgment, the plaintiff would not need to present additional evidence of discrimination beyond his or her prima facie case. *See id.* at 511, 113 S.Ct. at 2749. The prima facie case and disbelief of the defendant's proffered reason serve as circumstantial evidence that permits (but does not require) the court to infer that discrimination was the basis for the decision. *See id.* at 511, 113 S.Ct. at 2749; *Fuentes,* 32 F.3d at 763. The Third Circuit Court of Appeals has interpreted these holdings of Hicks to mean that in order to defeat a motion for summary judgment, the plaintiff must only

point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2). believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes,* 32 F.3d at 764 (emphasis added).[11] *See also Bray,* 110 F.3d at 990. This third prong of the larger framework turns the inquiry "from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced." *Hicks,* 509 U.S. at 516, 113 S.Ct. at 2752. The defendant's intervening articulation of a non–discriminatory reason "frames the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine,* 450 U.S. at 255–256, 101 S.Ct. at 1094–1095. As a result, increasing the plaintiff's burden in his prima facie case would unjustifiably merge parts one and three of the McDonnell Douglas test and skew the critical burden–shifting process.

Finally, unnecessarily increasing the plaintiff's burden to establish his prima facie

**11.** *Fuentes* states that the plaintiff could satisfy his burden by showing enough evidence to "allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory rea-sons ... was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." 32 F.3d at 764.

case seems particularly inappropriate in the present factual pattern. Beckett contends he was treated differently than Day because Beckett is African–American and Day is white. Beckett does not, however, dispute evidence presented by defendants that the two other African–American candidates for the position have the same general recollection as some of the white candidates that defendants asked them at he disputed five, or similar, questions. As a result, requiring Beckett to establish that Day was treated more favorably presents two problems. First, because all of the other applicants were treated more favorably than plaintiff, the mere assertion that Day was also treated more favorably is meaningless and, therefore, renders the prima facie case insignificant. Alternatively, the Court could interpret the "more favorably" language as requiring plaintiff to prove that Day alone was treated more favorably than defendant. This interpretation would impose an unacceptable burden on plaintiff. Plaintiff would be unable to establish his prima facie case simply because he asserts not that Day alone received questions but rather that plaintiff alone did not receive them because he was African–American and the greatest threat to Day. The difference between these two claims should not be determinative of plaintiff's ability to establish his prima facie case. As stated by the Supreme Court in *Burdine*, "[t]he burden of establishing a prima facie case of disparate treatment is not onerous." 450 U.S. at 253, 101 S.Ct. at 1093. Requiring plaintiff to establish "more favorable" treatment of Day in this case would make it so.

### B. Title VII liability

Plaintiff does not contend the Department of Corrections itself intentionally discriminated against plaintiff through a policy, pattern or practice; instead, plaintiff argues that the Department is liable based on agency principles.[12] The Third Circuit Appellate Court has determined that a supervisor or manager's discriminatory actions may be imputed to the employer if the supervisor is inside the " '*chain* of decision–makers who had the authority to hire and fire plaintiff.' " *Antol v. Perry*, 82 F.3d 1291, 1301 (3d Cir. 1996) (citing *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1085 (3d Cir. 1995) (emphasis added)). *See also Torres v. Pisano*, 116 F.3d 625, 637 (2d Cir.1997) (describing a supervisor "possessing substantial authority and discretion to make decisions concerning the terms" of the plaintiff's employment as satisfying the level of authority needed to impute the supervisor's actions to the employer).

■ Warden Kearney, the chief operating officer at SCI and the final decision–maker with regard to Beckett's promotion,[13] had sufficient authority so as to be an "agent" for Title VII purposes. However, plaintiff does not assert Kearney knew of the other defendants' alleged unequal application of the selection process. Instead, plaintiff argues Kearney discriminated against plaintiff by failing to change the outcome of the selection process despite knowing it disadvantaged minorities. This disadvantage allegedly occurred because the subjective interview component permitted discrimination to influence the decision–making process.

■ "[S]ubjective promotion criteria are not discriminatory per se.…" *Shealy v. City of Albany, Georgia*, 89 F.3d 804, 805 (11th Cir.1996). Of course, such criteria may not be used "to disguise an impermissible race–based selection." *Id.* at 806. Nevertheless, although subjective criteria may facilitate the consideration of discriminatory criteria, proof of intent to discriminate is still necessary. *Id.* Plaintiff has presented no evidence of any action on Kearney's part other than his acceptance of the panel's deci-

---

12. *See supra*, n. 1.

13. Although defendant Kearney contended in oral argument that the Commissioner and other officials at the Department of Corrections have final authority with regard to personnel decisions, it is apparent that such a review consists more of form than of substance. There is no evidence to dispute the fact that the defendants in this case had substantial, if not virtually complete, authority with regard to this decision. This conclusion is supported by defendant Kearney's deposition, in which he states, "I have the final say in the recommendation of the promotional panels." D.I. 57, App. at 70.

sion. Plaintiff has not presented evidence sufficient to raise a genuine factual dispute over Kearney's deposition statement that he only reviewed the final numerical scores of the interviewees. In addition, plaintiff concedes this selection process has been used numerous times in the past at SCI and at least one other correctional facility has used an interview component in its selection process as well. The fact that Kearney approved the results of an accepted selection process that had a subjective component, without more, neither raises a genuine factual dispute as to the credibility of his articulated non–discriminatory reason (i.e. Day had the highest overall score and received the panel's recommendation) nor does it permit a reasonable belief that discrimination was more likely than not a motivating cause. If the Court decided that a selection process providing *room* for discrimination violated a person's civil rights when no evidence indicated that the process was created for such a purpose, was used for that purpose, or had a disparate impact on a certain group, all selection processes containing a subjective element would be implicated. None of the civil rights statutes is that broad–sweeping. As a result, Kearney did not violate plaintiff's civil rights.

■ Plaintiff also argues that defendant Kearney discriminated against plaintiff by failing to follow the Merit Rules, regardless of any disadvantage to minorities. Plaintiff has not, however, cited any case or language in the rules that interprets § 13.0100 of the Merit Rules as limiting the selection criteria to the five delineated factors.[14] Although use of the word "shall" clearly indicates the mandatory nature of the listed factors, plaintiff does not dispute these components were included in the selection process. Instead, plaintiff avers that this list is exclusive. The Court disagrees. Given the state-wide na-

ture of these rules, these criteria must be interpreted as providing a common, objective foundation on which all such decisions should be made while allowing for the particular needs of the department or division making the personnel decision. At least for purposes of this case, no evidence has been presented to the contrary. In fact, the statutory language pursuant to which the rules were drafted reinforces that the list is required but not exclusive.[15] Further, even if adding a subjective element to the selection process did violate the Merit Rules and, thereby, the statute, this kind of violation alone would not provide sufficient evidence of discrimination by Kearney, especially given the same selection process had been frequently used by this and other facilities without complaint.

■ Plaintiff further argues that Kearney's actions were motivated by racial animus. However, plaintiff relies primarily on Kearney's admission that Day was a personal friend. While this evidence may show partiality, it does not demonstrate racial animus. Although a given plaintiff's own affidavit providing circumstantial evidence of discrimination may alone be enough to withstand a motion for summary judgment, *Jackson v. University of Pittsburgh*, 826 F.2d 230, 236 (1987),[16] Beckett's affidavit simply does not provide sufficient evidence of such discrimination by Kearney. The only paragraphs in plaintiff's affidavit that could relate to defendant Kearney state that plaintiff did not receive the promotion and that plaintiff was better qualified than Day. D.I. 57, App. at 111, ¶¶ 9–10. Such claims alone do not provide circumstantial evidence from which a factfinder could "reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

---

14. *See supra*, p. 4.

15. Del Code Ann. tit. 29, § 5918 states: "The rules shall provide for promotions, *giving consideration to* the applicant's qualifications ...." (emphasis added).

16. In *Jackson*, the court found that Jackson's deposition testimony undermined the defendants' claims that Jackson was dismissed for poor per-

formance or that Jackson had ever been given information about complaints. 826 F.2d at 234. Furthermore, the court found that Jackson's testimony offered evidence that the defendants actually solicited complaints about Jackson and that they had talked to people about how they were going to ruin Jackson. *Id.* The court held that such testimony was alone sufficient to defeat summary judgment. *Id.* at 236.

employer's action." *Fuentes,* 32 F.3d at 764. As a result, the issue of pretext in plaintiff's case against Kearney turns not on "the credibility of the competing testimony ... [which] is inappropriate to decide on a motion for summary judgment," *Weldon,* 896 F.2d at 800,[17] but rather on a lack of evidence.

■■■ Townsend, Deloy and Bowen also had sufficient authority in the selection process to satisfy the "supervisor test." Although their authority at SCI does not equal that of Kearney, it is clear that they constituted the most significant link in the chain of decision-makers within the context of the selection process. These defendants had much more control over and input into the process than Kearney. Townsend, Deloy and Bowen applied the various criteria, evaluated the applicants, assigned scores and made a selection, while Kearney only approved their recommendation.

With regard to the claim that these defendants violated Title VII while carrying out their responsibilities, there is a genuine factual dispute as to whether the members of the panel engaged in any discrimination. Plaintiff has offered evidence that these defendants basically set plaintiff up to fail. They utilized a highly subjective selection process which placed plaintiff at a disadvantage—the key difference between the two processes was the very criterion on which plaintiff allegedly performed poorly. Furthermore, the defendants treated plaintiff differently than the other applicants such that it was impossible for him to perform well—they did not ask him the questions on which the score was based. In addition,

plaintiff was the only individual who was both African–American and a serious contender for Day. Other evidence, such as defendants' inconsistent testimony regarding the substance of the interview with plaintiff arguably strengthens the inference of discrimination reasonably drawn from these facts, as reviewed in a light most favorable to plaintiff. As a result, defendants' motion for summary judgment on the Department's liability under Title VII will be denied.

## III. § 1983 Claims

### A. Qualified Immunity [18]

In *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738.[19] This standard developed from the Court's general premise that government officials are entitled to some degree of immunity to avoid unacceptable interference with their duties and the hindrances possibly associated with threats of liability. *Id.* at 806, 102 S.Ct. at 2732. The Supreme Court considered discretionary functions those in which the surrounding judgments "almost inevitably are influenced by the decisionmaker's experiences, values, and emotions." *Id.* at 816, 102 S.Ct. at 2737. *See also Winn v. Lynn,* 941 F.2d 236, 240 (3d Cir.1991) (stating that discretionary functions involve an element of

---

17. In *Weldon,* the plaintiff offered deposition testimony that he was assigned to one of the toughest supervisors at the company who had a history of difficulties with black trainees, he was then assigned to a supervisor who lacked experience with black employees, other black employees could show that his experience was not unique, there was statistical evidence showing disproportionate involuntary termination of black employees, and similarly situated white employees were treated differently. The court held that such testimony was sufficient to overcome a motion for summary judgment.

18. Although the defense of qualified immunity is unavailable to a defendant being sued in his official capacity, such a defense is available to a

defendant being sued in his personal capacity. *Kentucky v. Graham,* 473 U.S. 159, 166–167, 105 S.Ct. 3099, 3105–3106, 87 L.Ed.2d 114 (1985). Consequently, defendants are entitled to make a qualified immunity argument on the remaining personal capacity claims.

19. The Court noted that while *Harlow* involved federal officials, the Court had previously held that they it would be " 'untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials.' " (457 U.S. at 818 n. 30, 102 S.Ct. at 2738 n. 30) (quoting *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)).

choice or judgment and are based on considerations of public policy).

There appears to be no dispute among the parties that Bowen, Deloy and Townsend were engaging in a discretionary activity when they interviewed plaintiff and that Kearney was performing a discretionary function when he approved the selection of Day for the position.[20] Regarding Bowen, Deloy and Townsend, there is a genuine factual dispute as to whether the answers to all five of the critical questions were clear and objectively measured. There is also a dispute over whether the right answers to the allegedly objective questions were agreed upon by all defendants. Finally, although half of the interview process was graded based on the answers to the questions, the other half was based simply on the "interview." This latter category appears highly subjective, including such factors as conduct, composure, and communication skills. With regard to Kearney, the evidence presented by both parties supports the conclusion that his approval was voluntary and dictated largely by subjective elements. *See Winn*, 941 F.2d at 240 (noting that because the supervisor at issue was not obligated to approve the disputed order, his decision to "rely on the document prepared by his subordinates could be considered an exercise of discretion"). As a result, the Court considers the activities that underlie this suit to fall within those activities covered by *Harlow*.

The next issue is whether the individual defendants violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Defendants argue none of the individual defendant's actions violated such a right and, consequently, the issue of constructive or actual knowledge is irrelevant; all defendants are entitled to qualified immunity. Plaintiff contends that none of the defendants is entitled to such immunity because each one violated plaintiff's rights to Due Process and Equal Protection under the Fourteenth Amendment by engaging in a race–based selection process. Furthermore, defendants were or should have been aware that such actions violated these clearly established rights.

■ Plaintiff alleges Kearney permitted a subjective component to be injected into the selection process and that such an allowance violated plaintiff's rights because it provided an opportunity to discriminate. Plaintiff has presented no evidence, however, that Kearney was aware the subjective element of the selection process was utilized to disadvantage a particular individual for reasons of race or otherwise. As the Third Circuit Court of Appeals stated in *Winn*, the supervisor "had not been previously informed about any potential harm to the appellants[,] … [n]or was he aware of, nor should he have been aware of such harms." 941 F.2d at 241. Kearney's inaction in these circumstances did not violate a clearly established statutory or constitutional right.[21]

■ Plaintiff also argues that because the Merit Rules were promulgated pursuant to State law, Kearney violated § 1983 by failing to limit the selection process to the listed factors. The Supreme Court has established, however, that § 1983 does not protect against violations of state law; only federally established rights are covered. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980) (stating that a § 1983 cause of action requires an allegation that someone has deprived the plaintiff of a federal right). Because plaintiff's second argument is not viable under § 1983, defendant Kearney does not have to defend against it. Moreover, as stated previously, the use of an interview in the selection process was not even a violation of a clearly established state right.

■ Plaintiff's third § 1983 argument against defendant Kearney is that he failed to criticize the highly subjective nature of the

---

**20.** *See Winn*, 941 F.2d at 240, stating that "[a]lthough Mr. Lynn did not carefully review the order, his decision to rely on the document prepared by his subordinates could be considered an exercise of discretion."

**21.** Of course, the highly subjective nature of the selection process may be relevant to establish discrimination by Townsend, Deloy, and Bowen. In and of itself, however, it does not constitute a violation of a federal right.

selection process because he desired the result of the selection process—his white friend was selected and an African–American individual was not. In this argument, the dispute relates not to Kearney's knowledge or actions but rather to his motive or state of mind. *Harlow* makes clear, however, that the qualified immunity standard is an objective one. 457 U.S. at 815–818, 102 S.Ct. at 2736–2738 (specifically eliminating the subjective "good-faith" component of the test and holding that only the objective component remains viable). Whether Kearney's motive was race, his personal friendship with Day, or mere complacence, is not for the Court to inquire when considering a claim of qualified immunity.[22] Rather than inquire into motive, the Court must focus on whether Kearney knew or should have known that his acceptance of the results of a partially subjective selection process, without more, violated a clearly established statutory or constitutional right. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Plaintiff has not presented one case which demonstrates such a right exists at all, let alone was clearly established at the time. Consequently, the Court will grant summary judgment based on qualified immunity for defendant Kearney on Beckett's § 1983 claims.

Defendant's Bowen, Townsend, and Deloy are charged in their individual capacity with violating plaintiff's rights to Due Process and Equal Protection. These defendants' claims of qualified immunity will be analyzed separately for each alleged violation.

*Equal Protection*

The Equal Protection Clause commands that no state shall "deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "Preferring members of any one group for no reason other than race ... is discrimination for its own sake" and is forbidden by the Fourteenth Amendment. *Regents of the University of California v. Bakke,* 438 U.S.

265, 306, 98 S.Ct. 2733, 2756, 57 L.Ed.2d 750 (1978).

▮ Regarding plaintiff's Equal Protection claim, the plaintiff asserts he was not asked the same questions as all of the other applicants. As a result, defendants did not have a basis to make a fair comparison of plaintiff and the other applicants on this aspect of the selection process.[23] Furthermore, Beckett performed as well as or better than Day on all other facets of the selection process, D.I. 57, App. at 55, and would have obtained the promotion but for his allegedly poor performance on the interview questions. Unlike the situation with Kearney, the genuine dispute in this situation revolves not only around defendants' states of mind but also around their objective actions. Whether Bowen, Townsend and Deloy treated a job applicant who is African–American differently than one who is white in the context of a promotion is a material issue of fact that gives rise to an inference of an Equal Protection violation. Finally, the contours of the Fourteenth Amendment were sufficiently clear at the time such that a reasonable official would have known or should have known that discriminating against someone who is African–American in the context of a promotion violated these rights. As a result, defendants' motion for summary judgment for defendants Townsend, Deloy and Bowen on the basis of qualified immunity will be denied on the § 1983 Fourteenth Amendment claim.

*Due Process*

▮ Although plaintiff's brief did not articulate how defendants deprived him of life, liberty or property without due process of the law, at oral argument plaintiff contended he was deprived of substantive due process. Substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Washington v.*

---

22. The only evidence plaintiff provides that Kearney remained knowingly and intentionally silent about the incorrect interview procedures is Kearney's admission that Day is a close friend and plaintiff's uncorroborated assertion that race was the motive.

23. Although there were other African–American applicants, plaintiff was the only serious contender for the position who was African–American. D.I. 57, App. at 55.

*Glucksberg,* —— U.S. ——, —— – ——, 117 S.Ct. 2258, 2267–2268, 138 L.Ed.2d 772 (1997). With respect to restrictions on economic interests, substantive due process protects only against government restrictions that are "arbitrary and irrational" as compared to those that have a "legitimate . . . purpose furthered by rational means." *United States v. Carlton,* 512 U.S. 26, 30–31, 114 S.Ct. 2018, 2021–2022, 129 L.Ed.2d 22 (1994).

Plaintiff contends that the addition of a subjective interview component to the selection process was unfair because it permitted discrimination and violated the Merit Rules. These arguments do not support a substantive due process claim. The fact that the interview may have been unequally applied in this case may establish an Equal Protection violation but it does not withstand a substantive due process analysis. As a result, defendants' motion for summary judgment for defendants Townsend, Deloy and Bowen on the basis of qualified immunity will be granted on the § 1983 Due Process claim.

### B. Supervisory/Individual Liability of Defendant Kearney

■ Even if defendant Kearney had not succeeded in his qualified immunity defense, plaintiff's claims against Kearney could not stand. Plaintiff argued in his brief that Kearney was liable "not simply upon his role as supervisor" but also based on his direct involvement in the process when he reviewed and approved the decision. At oral argument, plaintiff stated he was not arguing for supervisory liability at all. Because the following standard for supervisory liability includes a personal involvement component (i.e. "participated in" the discrimination), it is not necessary to chose between direct and supervisory theories when analyzing Kearney's liability, as the outcome with remain the same.

■ In order to maintain a claim for supervisory liability, plaintiff must show that Kearney "participated in violating [plaintiff's] rights, directed others to violate them, . . . or had knowledge of and acquiesced in his sub-

ordinates' violations." *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1478 (3d Cir. 1990). *Accord, Baker v. Monroe Township,* 50 F.3d 1186, 1190–1191 (3d Cir.1995). Plaintiff does not argue that Kearney participated in or directed Bowen, Townsend, and Deloy's unfair application of the selection process. Plaintiff does not even claim that Kearney knew of the others' unequal application of the process. Rather, plaintiff argues Kearney violated § 1983 by "participating in" and/or "knowing of and acquiescing to" a partially subjective selection process that allowed for the other defendants to apply discriminatory motives. As discussed previously, however, the utilization of some subjective criteria is not per se discrimination. *See Shealy,* 89 F.3d at 805. Neither Kearney's knowledge that subjective criteria were, as in the past, used to help arrive at the final applicant scores, nor his subsequent acceptance of such scores, can alone create a genuine factual dispute over whether Kearney violated plaintiff's constitutional or statutory rights. Holding otherwise would paralyze the selection processes in most agencies and companies around the country and render the Fourteenth Amendment virtually meaningless.

Although plaintiff also argues that Kearney's inaction was motivated by racial animus, plaintiff presents insufficient evidence to support this claim. As stated previously, plaintiff's proof that Kearney considered Day a personal friend is not evidence of racial discrimination. Finally, plaintiff's affidavit does not present evidence from which a juror could reasonably infer that Kearney discriminated. Defendant Kearney's motion for summary judgment on the issue of supervisor liability will be granted.

### C. Bowen, Townsend, and Deloy's liability under § 1983

■ The McDonnell Douglas framework for establishing proof of intentional discrimination under Title VII is applicable to § 1983 as well. *See Hicks,* 509 U.S. at 506 n. 1, 113 S.Ct. at 2746 n. 1.[24] Defendants argue

---

**24.** The Court stated that it would "assume that the McDonnell Douglas framework is fully applicable to racial–discrimination–in–employment

claims under 42 U.S.C. § 1983" and cited to the Court's application of the Title VII framework to § 1981 claims in *Patterson v. McLean Credit Un-*

there is no § 1983 liability because they treated plaintiff the same as all other applicants (i.e. they asked him the same questions) and because, even if they did not ask him the same questions, plaintiff has produced no evidence that such an aberration resulted from racial animus. Defendant relies almost exclusively on the fact that other applicants who were African–American were asked the same or similar questions. In making this argument, defendant discusses *Molthan v. Temple University*, 778 F.2d 955 (3rd Cir.1985), in which the Third Circuit Court of Appeals upheld a directed verdict in a case that presented a record showing "no more than a denial of promotion as a result of a dispute over qualifications" and some "generalized and unreliable" statistics of underrepresentation of female full professors at the university as a whole. *Id.* at 962–63.

The Court believes, however, that the case at bar is more closely aligned with the one presented to the Third Circuit Court of Appeals in *Hampton v. Borough of Tinton Falls Police Department*, 98 F.3d 107 (1996), than to the one at issue in *Molthan*. In *Hampton*, an African–American police sergeant asserted various claims of racial discrimination against the police department and several officials based on their failure to promote him. *See id.* at 110. The plaintiff showed numerous discrepancies among the scoring procedures for different candidates and between the regulations controlling the process and the approach that the defendants used to evaluate the plaintiff. *See id.* at 114–115. In overturning the district court's grant of summary judgment for the defendants, the *Hampton* court stated that

> [t]he significance of such evidence is for a jury's determination, not a court's. Had these discrepancies been presented to a jury, it may have found defendant's explanations quite credible.... However, that

is not the test that we employ ... Drawing all reasonable inferences in favor of plaintiff, as we must, it is clear that they were entitled to have a jury decide whether or not the reasons proffered for not promoting Hampton were real or pretextual

*Id.* at 115.

Although plaintiff's case does not present the litany of discrepancies demonstrated in *Hampton*, plaintiff has raised a genuine factual issue as to whether defendants manipulated the process to plaintiff's disadvantage because of his race. Defendants utilized a highly subjective selection process, arguably knowing that plaintiff would have been selected under the objective criteria listed in the Merit Rules. The key difference between the two approaches—the interview— was the only criterion on which Beckett performed more poorly than Day. Moreover, the defendants prevented plaintiff from performing well by not asking him the questions on which the score was based. Finally, plaintiff was the only African–American who was a serious contender for Day.[25] Although a jury may rely heavily, as defendants do, on the fact that other applicants who were African–American generally recall being asked a variation of some of the questions, this information is not determinative for the Court and the significance of such information should be left to a jury.[26] Defendants' motion for summary judgment on the issue of § 1983 Equal Protection liability for defendants Bowen, Townsend, and Deloy will be denied.

### CONCLUSION

Summary judgment is granted for the Department of Corrections on plaintiff's § 1983 claim and denied for the Department on plaintiff's Title VII claim. Summary judgment is granted for defendant Kearney on all claims. Summary judgment is granted for

ion, 491 U.S. 164, 185–186, 109 S.Ct. 2363, 2377–2378, 105 L.Ed.2d 132 (1989). *Hicks,* 509 U.S. at 506 n. 1, 113 S.Ct. at 2746 n. 1.

**25.** Plaintiff and defendants were unable in their briefs and at oral argument to articulate the order in which the criteria were scored. As a result, it is unclear if defendants Deloy, Townsend and Bowen knew of plaintiff's standing when they conducted the interview.

**26.** It should also be noted that *Molthan* was in a directed verdict procedural posture while *Hampton,* like the case at bar, was in a summary judgment procedural posture. Therefore, as in *Hampton* and unlike in *Molthan,* the Court does not have the benefit of all the evidence that will be presented at trial.

defendants Townsend, Bowen and Deloy on plaintiff's Title VII and § 1983 Due Process claims. Summary judgment is denied for defendants Townsend, Bowen, and Deloy on plaintiff's § 1983 Equal Protection claim. As a result, left for trial are the Title VII claim against the Department and the § 1983 Equal Protection claim against defendants Townsend, Bowen and Deloy.